UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DINO A. SCHMIDT,

                              No. 14-13885

          Plaintiff,                 District Judge Sean F. Cox

v.                                Magistrate Judge R. Steven Whalen

COMMISSIONER OF
SOCIAL SECURITY,

         Defendant.

_____/

**REPORT AND RECOMMENDATION**

Plaintiff Dino A. Schmidt ("Plaintiff") brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. Parties have filed cross motions for summary judgment which have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment be DENIED and that Plaintiff's Motion for Summary Judgment be GRANTED to the following extent:

(1) A remand for an award of benefits for, at a minimum, a closed period of at least 12 months under Listing 3.03B;

(2) A remand for determination of whether Dr. Long's treating opinion is entitled controlling weight; and

(3) A remand for determination of whether Plaintiff is entitled to ongoing benefits.

## I.   PROCEDURAL HISTORY

Plaintiff applied for DIB and SSI on January 12, 2012, alleging disability as of August 28, 2008 (Tr. 169, 176).  After the initial denial of the claim, Plaintiff requested an administrative hearing, held on April 11, 2013 in Mount Pleasant, Michigan before Administrative Law Judge ("ALJ") Kathleen Eiler (Tr. 37).  Plaintiff, represented by attorney Matthew Taylor, testified, (Tr. 40-51), as did vocational expert ("VE") Donald Heckler (Tr. 51-53).  On July 3, 2013, ALJ Eiler found Plaintiff not disabled (Tr. 32).  On September 5, 2014, the Appeals Council denied review (Tr. 1-3).  Plaintiff filed suit in this Court on October 7, 2014.

## II.  BACKGROUND FACTS

Plaintiff, born October 9, 1968, was 44 at the time of the administrative decision (Tr. 32, 169).  He left school after 10th grade and worked previously as a bartender/server (Tr. 198).  He alleges disability due to seizures, asthma, difficulty breathing, lumbar spine radiculopathy, anxiety, and sleep apnea (Tr. 197).

### A.  Plaintiff's Testimony

Plaintiff offered the following testimony:

-2-

He did not hold a driver's license and had not driven in over 10 years (Tr. 40). He last worked on August 28, 2008 (Tr. 40). Severe back pain, the inability to lift more than 10 pounds, and anxiety prevented him from working (Tr. 41). He experienced daily back pain shooting from his lower back to the back of his neck (Tr. 41). The back condition was exacerbated by too much standing or walking (Tr. 41). He was unable to stand or walk for more than 20 minutes before needing to sit (Tr. 41). He was unable to walk more than half a block (Tr. 42). He coped with back pain with the use of pillows and by using a heating pad three times each day (Tr. 42). Turning his neck quickly also caused discomfort (Tr. 47). Plaintiff experienced the medication side effects of memory problems (Tr. 48).

Plaintiff also experienced breathing problems as a result of asthma, Chronic Obstructive Pulmonary Disease ("COPD"), and emphysema (Tr. 43). Walking more than half a block caused shortness of breath (Tr. 43). He used a nebulizer two times a day (Tr. 44). He was hospitalized in 2011 for breathing problems (Tr. 44). He also experienced anxiety attacks twice a day at which time he needed to "sit down and calm [him]self" (Tr. 45). He coped with anxiety by shopping before the stores became crowded (Tr. 46). He also experienced anxiety during doctors' appointments (Tr. 46).

In response to questioning by his attorney, Plaintiff denied cooking or grocery shopping (Tr. 49). He relied on family and friends for rides (Tr. 50). He had been told that he needed an oxygen tank but was unable to afford one (Tr. 50). He passed the time by doing crossword puzzles and reading the newspaper (Tr. 50). He drank on an occasional basis (Tr.

50).

### A.  Medical Records

### 1.  Treating Records

In February, 2011, Chythanya Arikati, M.D. observed that Plaintiff was fully oriented with a normal mood and affect despite reports of memory loss  (Tr. 446).  Dr. Arikati noted that recent seizure activity could be attributable to alcohol withdrawal (Tr. 440).

In March, 2011 neurosurgeon Naman A. Salibi, M.D. noted a history of an August, 2008 "severe traumatic brain injury with a C07 spinal fracture and broken nose" (Tr. 302). Plaintiff reported forgetfulness as a result of the accident (Tr. 302).  Dr. Schell noted that an MRI of the brain from the same month showed "mild cortical atrophy" (Tr. 304, 482).  Dr. Salibi noted a normal affect (Tr. 480).  Treating notes state that Plaintiff exhibited shortness of breath due to chronic asthma (Tr. 302-303).  April, 2011 emergency room records state that Plaintiff experienced a grand mal seizure while at home watching television (Tr. 278). An EEG, EMG of the lower extremities, and CT scan of the brain were all normal (Tr. 281-282, 473, 477).  He was discharged in stable condition (Tr. 283).  The same month, an EMG study conducted in response to Plaintiff's complaints of back pain was normal (Tr. 306).  Dr. Arikati's May, 2011 records state that the seizure condition resolved with medication (Tr. 435).

In June, July, and August, 2011 Plaintiff sought emergency treatment for asthma attacks (Tr. 270, 317).  A July, 2011 chest x-ray was unremarkable (Tr. 468).  Later in

August, 2011, Plaintiff underwent a bronchial stent placement after experiencing asthmatic symptoms (Tr. 295, 349-350, 458-460). A spirometry testing performed the following month showed severe pulmonary obstructive lung disease (Tr. 511).

October, 2011 imaging studies of the lumbar spine showed moderate stenosis at L4-L5 but were otherwise unremarkable (Tr. 310-311, 455-456). The same month, Dr. Salibi recommended continued conservative care for the back condition (Tr. 299). Plaintiff sought emergency treatment for a respiratory infection (Tr. 357). He appeared fully oriented with normal strength and cognitive abilities (Tr. 359). The following month, Plaintiff sought emergency treatment for a cough and anxiety (Tr. 376, 378). Later the same month, Plaintiff sought emergency treatment for anxiety (Tr. 384). He was diagnosed with pneumonia (Tr. 385). Toby Long, M.D.'s hospital followup notes from the same month state that Plaintiff requested medication for anxiety (Tr. 415). In December, 2011, Plaintiff reported that his anxiety was "much improved" and reported only occasional wheezing (Tr. 410). Dr. Long's January, 2012 treating notes state that Plaintiff denied shortness of breath (Tr. 405). The following month, Plaintiff was transported to the hospital by ambulance after experiencing breathing difficulties (Tr. 513). He was diagnosed with "acute asthma exacerbation" and treated with steroids (Tr. 515-516). Dr. Long noted that Plaintiff experienced relief from anxiety with the use of Sertraline (Tr. 518). March, 2012 emergency records show that Plaintiff sought emergency treatment for rib pain caused by a "coughing fit" (Tr. 522-523). May and June, 2012 records state "no changes" in the asthma condition (Tr. 527).

July, 2012 emergency room notes state that Plaintiff reported blacking out after missing a dose of anti-seizure medication (Tr. 533). Treating records state that Plaintiff was fully oriented (Tr. 535). A CT of the brain was unremarkable (Tr. 558). Other treating records from the same month state that he experienced shortness of breath on exertion but exhibited a normal mood and affect (Tr. 564). Dr. Long's July 30, 2012 records state that Plaintiff was "doing well" but needed to obtain a CPAP machine for sleep apnea (Tr. 566). The same month, a chest x-ray showed possible scar tissue and left rib fractures (Tr. 557). August, 2012 records show that Plaintiff experienced "severe" restrictive lung disease (Tr. 562, 564). September, 2012 treating notes state that Plaintiff was "feeling well" but appeared to have broken ribs due to severe coughing (Tr. 572). In November, 2012, Dr. Long noted current diagnoses of sleep apnea (severe) and emphysema (Tr. 577).

In March, 2013, Dr. Long completed a medical assessment of Plaintiff's work-related activities, finding that Plaintiff was unable to lift more than five pounds, stand or walk for more than 14 minutes at a time, or sit for more than one hour (Tr. 578). Dr. Long precluded Plaintiff from all climbing, stooping, crouching, kneeling, crawling, pushing/pulling, and bending with a restriction of occasional balancing and reaching (Tr. 579). He found that Plaintiff would be restricted from work involving heights, moving machinery, temperature extremes, chemicals, fumes, and humidity (Tr. 579). He found that Plaintiff's discomfort would affect his ability to concentrate and that his conditions would cause him to miss work 80 percent of the time (Tr. 580). He found that the "most severe" condition of emphysema,

-6-

along with chronic pain, and anxiety, precluded all work (Tr. 580).

### 2.  Non-Treating Records

In May, 2012, Siva Sankaran, M.D. performed a consultative physical exam, noted Plaintiff's report of anxiety, a neck injury, and the inability to walk more than half of a block (Tr. 485).  Plaintiff denied current breathing problems but noted that the condition worsened in "hot and humid or cold and rainy" weather (Tr. 486).  He reported drinking two beers each week (Tr. 486).

Dr. Sankaran noted lumbar spine tenderness with muscle spasms, postural limitations, and a slow, but steady gait (Tr. 488-490).  A pulmonary function report showed mild airway obstruction and "abnormally low" forced vital capacity consistent with asthma (Tr. 495).  The following month, Bruce Fowler, Psy. D. L.P. performed a consultative psychological evaluation, observing that Plaintiff was fully oriented but experienced anxiety (Tr. 500-501). He assigned Plaintiff a GAF of 51, concluding that Plaintiff's psychological symptoms "should not be as prohibitive about working as are [the] medical complaints"[1] (Tr. 501).

The following month, Mark Garner, Ph.D. performed a non-examining review of the treating records, finding that Plaintiff experienced mild restriction in activities of daily living, and moderate limitation in social functioning and concentration, persistence, or pace (Tr. 82). The same month, Sarah Bancroft-Treadway, M.D. performed a non-examining review of the

---

[1]

A GAF score of 51-60 indicates moderate symptoms (occasional panic attacks) or moderate difficulty in social, occupational, or school functioning. *Diagnostic and Statistical Manual of Mental Disorders--Text Revision,* 32 ("*DSM-IV-TR*" )(4th ed.2000).

treating records as to the physical problems, finding that Plaintiff could lift 10 pounds frequently and 20 occasionally; sit for six hours in an eight-hour workday and stand/walk for four; and push or pull without limitation (Tr. 84).  Dr. Bancroft-Treadway precluded all climbing of ladders, ropes, and scaffolds and crawling (Tr. 85).   She found that Plaintiff would be precluded from work involving machinery and heights (Tr. 85).

### C.  Vocational Testimony

VE Hecker classified Plaintiff's former work as a bartender as exertionally light and semiskilled; fast food worker, light/unskilled; and stocker, unskilled/medium [2] (Tr. 51-52). The ALJ then posed the following question to the VE, taking into account Plaintiff's age, education, and work experience:

> [Assume this person can perform work at the sedentary exertional level.  He can occasionally reach overhead with his bilateral upper extremities.  He can never climb ladders, ropes, or scaffolds and can never crawl.  He can occasionally climb ramps or stairs.  Occasionally balance, stoop, crouch, or kneel.  He must avoid concentrated exposure to temperature extremes and pulmonary irritants.  And avoid all exposure to workplace hazards and vibration.  He can perform simple, routine, repetitive tasks with occasional changes in a routine work setting and no production rate pace work.  He can occasionally interact with supervisors, co-workers, and the general public.

---

[2]

20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools;  *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy*  work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. *Very Heavy* work requires "lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. § 404.1567(e).

Could this person perform any of the claimant's past work? (Tr. 52).

The VE responded that given the hypothetical limitations, the above-limited individual would be unable to perform any of Plaintiff's past relevant work but could work as a surveillance systems monitor (750 jobs in the state economy); inspector/checker (4,500); and packager (4,500) (Tr. 53). The VE testified that if the individual were required to miss two or more days of work each month, all work would be precluded (Tr. 53). In response to questioning by Plaintiff's attorney, the VE stated that the need to be "off task" two to four times a day for 30 minutes due to breathing problems would preclude all work (Tr. 53). He stated further that if the individual was prone to "drifting off for at least 15 minutes" every hour, all work would be precluded (Tr. 53).

### D.  The ALJ's Decision

Citing the medical records, ALJ Eiler found that Plaintiff experienced the severe impairments of degenerative disc disease, seizure disorder, asthma, COPD, and anxiety but that none of the conditions met or equaled a listed impairment found in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 23-24). As to the mental impairments, the ALJ found that Plaintiff experienced mild limitation in activities of daily living and moderate limitation in social functioning and concentration, persistence, and pace (Tr. 25).

The ALJ determined that Plaintiff had the Residual Functional Capacity ("RFC") for sedentary work with the following additional restrictions:

> [H]e can occasionally reach overhead, balance, kneel, stoop, crouch, and climb
> ramps or stairs but never climb ladders, ropes, or scaffolds and crawl. He must

avoid concentrated exposure to temperature extremes and pulmonary irritants. The claimant must avoid all exposure to workplace hazards and vibration. He is limited to simple routine repetitive task with occasional changes in a routine work setting and no production pace work. The claimant can occasionally interact with supervisors, coworkers, and the general public (Tr. 26).

Citing the VE's testimony, the ALJ determined that while Plaintiff was unable to perform his past relevant work, he could work as a surveillance system monitor, inspector, and packager (Tr. 31).

The ALJ discounted Plaintiff's alleged degree of limitation, noting that he was able to perform self-care tasks, watch television, and get along with authority figures (Tr. 28). She noted that Plaintiff's treatment had been "routine and conservative" (Tr. 28). She cited the consultative examiner's finding that the psychological limitations were "not serious" (Tr. 28).

### III.   STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either

way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir.

1986)(en banc). In determining whether the evidence is substantial, the court must "take into

account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health

& Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the

administrative record as a whole, and may look to any evidence in the record, regardless of

whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*,

884 F.2d 241, 245 (6th Cir. 1989).

## IV.    FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected

to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In

evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence,

whether the claimant: 1) worked during the alleged period of disability; 2) has a severe

impairment; 3) has an impairment that meets or equals the requirements of an impairment

listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she

can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has

the burden of proof at steps one through four, but the burden shifts to the Commissioner at

step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the

residual functional capacity to perform specific jobs existing in the national economy."

-11-

*Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## V.  ANALYSIS

### A.  Listing 3.03

Plaintiff argues the ALJ's Step Three finding that he did not meet Listing 3.03B

(asthma) was not well supported or explained (Tr. 24).  Plaintiff contends that he meets the

Listing 3.03B because he was hospitalized for asthma at least six times in a 12-month period

as required to establish disability under the Listing.  20 C.F.R Part 404, Subpart P, Appendix

1 § 3.03B.  In response, Defendant contends that the ALJ's Step Three finding was supported

by Dr. Bancroft-Treadway's non-examining finding that Plaintiff did not meet the Listing.

Defendant notes further that Plaintiff's hospitalizations for asthma occurred within an eight-

month period and thus, he cannot show that he experienced the condition for the 12-month

period required to establish disability.  42 U.S.C. §423(d)(1)(A); 20 C.F.R. § § 404.1505(a),

416.905(a).

To meet Listing 3.03B (asthma), a claimant must demonstrate asthmatic bronchitis

characterized by the following

> "Attacks (as defined in 3.00C), in spite of prescribed treatment and requiring
> physician intervention, occurring at least once every 2 months or at least six
> times a year. Each in-patient hospitalization for longer than 24 hours for
> control of asthma counts as two attacks, and an evaluation period of at least 12
> consecutive months must be used to determine the frequency of attacks."

Under Listing 3.00C, "attacks" of asthma are defined as follows:

[P]rolonged symptomatic episodes lasting one or more days and requiring

intensive treatment, such as intravenous bronchodilator or antibiotic administration or prolonged inhalational bronchodilator therapy in a hospital, emergency room or equivalent setting. Hospital admissions are defined as inpatient hospitalizations for longer than 24 hours. The medical evidence must also include information documenting adherence to a prescribed regimen of treatment as well as a description of physical signs. For asthma, the medical evidence should include spirometric results obtained between attacks that document the presence of baseline airflow obstruction.

The ALJ found that Plaintiff did not meet Listing 3.03B because "an evaluation period of at least 12 consecutive months must be used to determine the frequency of the attacks," noting that the hospitalizations for asthma began in June, 2011 and ended in February, 2012 (Tr. 24). The ALJ's rationale for finding that Plaintiff did not meet Listing 3.03B is not well taken. First, the ALJ's conclusion that the asthma attacks needed to occur at least every two months over a 12-month period to show disability amounts to an erroneous interpretation of the Listing. Under Listing 3.03B a claimant can establish disability by experiencing attacks by either (1) "at least once every 2 months" *or* (2) "at least six times a year." (Emphasis added). While the following sentence states that "an evaluation period of at least 12 consecutive months must be used to determine the frequency of attacks, it cannot be interpreted to state that an individual experiencing at least six attacks over the course of eight to nine months, followed by a three to four month period without a hospitalization, does not meet the Listing. The medical records and objective testing shows that Plaintiff experienced significant and severe symptoms of asthma as early as March, 2011 to May, 2012 at which time a Sprirometry report (Tr. 495) showed that the asthma was "poorly controlled" (Tr. 302-303, 495, 511, 522-523, 527, 564). Moreover, the ALJ acknowledged

that Plaintiff experienced asthma for more than 12 months by including it among the "severe"

impairments at Step Two[3] (Tr. 23-24). Thus, consistent with the Listing, the "evaluation

period" during which Plaintiff suffered from asthma exceeded 12 months, and the Plaintiff

had six hospitalizations within a 12-month period.

Moreover, Defendant's argument that the ALJ permissibly relied on Dr. Bancroft-

Treadway's non-examining conclusions in making her Step Three findings is not well taken.

The ALJ did not cite Dr. Bancroft-Treadway's findings in support of the Step Three findings

and noted elsewhere in the opinion that the non-examining findings (including findings that

Plaintiff could perform light work and was not required to avoid respiratory irritants) were

entitled to only "some" weight (Tr. 28, 102-103).

Defendant points out that Dr. Bancroft-Treadway concluded that some of the

hospitalizations were "related to tranchael stenosis rather than true asthma exacerbations"

(Tr. 86).  However, the ALJ's Step Three analysis is problematic even assuming that she

adopted these conclusions.   Contrary to Dr. Bancroft-Treadway's summation, the June 5,

2011 (Tr. 276), June 23, 2011  (Tr. 317), July 11, 2011 (Tr. 273), August 2, 2011 (Tr. 273),

and August 17, 2011 (Tr. 337) emergency department records all indicate that Plaintiff was

treated for asthma attacks.  The November 29, 2011 emergency treatment, while primarily

addressing a diagnosis of pneumonia, note that Plaintiff's breathing problems were

---

[3]Notably in contrast, the ALJ declined to include sleep apnea among the severe
impairments because the medical evidence did not support a finding that the condition
lasted for 12 months (Tr. 24).

exacerbated by chronic asthma (Tr. 385-386).  And even assuming that the November, 2011

treatment was for a respiratory condition other than asthma,  the February 2, 2012 emergency

department records mark the sixth time in one year that Plaintiff received emergency hospital

treatment for asthma "attacks" (Tr. 515).  Defendant does not dispute that Plaintiff required

repeated emergency intervention even after adhering to the prescribed medical treatment.

To the extent that the ALJ relied on Dr. Bancroft-Treadway's findings in determining that

Plaintiff did not meet Listing 3.03B, Dr. Bancroft-Treadway's findings were based on an

erroneous interpretation of the hospital records.  For these reasons, the Step Three errors

warrant a remand.

### B.  The Treating Physician Analysis

Plaintiff also argues that the ALJ erred by failing to adopt Dr. Long's March, 2013

disability opinion.   He contends that the ALJ's reasons for rejecting Dr. Long's opinion are

not supported by the record.

If the opinion of the claimant's treating physician is well-supported by medically

acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other

substantial evidence in [the] case record, it must be given controlling weight." *Hensley v.

Astrue*, 573 F.3d 263, 266 (6th Cir.2009) (internal quotation marks omitted) (citing *Wilson

v. CSS*, 378 F.3d 541, 544 (6th Cir.2004); 20 C.F.R. § 404.1527(c) (2)). However, in the

presence of contradicting substantial evidence, the ALJ may reject all or a portion of the

treating source's findings, *see Warner v. Commissioner of Social Sec.*, 375 F.3d 387, 391-392

(6th Cir.2004), provided that he supplies "good reasons" for doing so. *Wilson*, at 547; 20 C.F.R. § 404.1527(c)(2)). In explaining the reasons for giving less than controlling weight to the treating physician opinion, the ALJ must consider (1) "the length of the ... relationship" (2) "frequency of examination," (3) "nature and extent of the treatment," (4) the "supportability of the opinion," (5) "consistency ... with the record as a whole," and, (6) "the specialization of the treating source." *Wilson*, at 544.

The failure to articulate "good reasons" for rejecting a treating physician's opinion constitutes reversible error. *Gayheart v. CSS*, 710 F.3d 365, 376 (6th Cir.2013); *Wilson,* 378 F.3d at 544–546 (6th Cir.2004)(citing § 404.1527(c)(2)). "[T]he Commissioner imposes on its decision-makers a clear duty to 'always give good reasons in our notice of determination or decision for the weight we give [a] treating source's opinion.'" *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir.2011). "These reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Gayheart*, at 376 (citing SSR 96–2p, 1996 WL 374188, *5 (1996)).

The ALJ found that Dr. Long's opinion was entitled to "some," but not controlling weight (Tr. 29). She reasoned that Dr. Long's conclusion that Plaintiff would be unable to work 80 percent of the time was based on Plaintiff self-reported psychological symptoms which were "outside" Dr. Long's "area of expertise" (Tr. 29). The ALJ concluded that Dr. Long's finding that "breathing problems" created disabling limitations was undermined by

-16-

"mixed results in diagnostic findings" (Tr. 29).  She noted that Dr. Long's finding of exertional limitations stood in contrast with "minimal findings regarding seizures and back pain" (Tr. 29).

The ALJ's conclusion that Dr. Long based the bulk of his findings on subjective but unsupported complaints is inaccurate.  While the ALJ discounted Plaintiff's claim of back problems, the 2008 cervical spine fracture and ensuing back pain is well documented by the treating sources (Tr. 570).  Although the ALJ appeared to conclude that Dr. Long found that the exertional limitations were attributable to back problems alone, his assessment notes that Plaintiff's exertional abilities were not just limited by back problems  but primarily, the "most severe" diagnosis of emphysema which "markedly" limited the ability to function (Tr. 580).  Dr. Long noted that the emphysema, combined with chronic pain and a history of anxiety would severely restrict his work abilities (Tr. 580).   Dr. Long's treating records, documenting the long-term respiratory problems due to asthma, emphysema, and COPD, support the finding that Plaintiff experienced significant exertional limitations as a result of respiratory problems (Tr. 572-577).  Dr. Long's finding that Plaintiff experienced disabling respiratory problems is supported by the hospital records and objective testing (Tr. 495, 511).  Because the ALJ's explanation for discounting the treating opinion does not constitute "good reasons," under § 404.1527(c)(2), a remand on this basis is also appropriate.

### C.  Remand

The final question is whether the above mistakes warrant a remand for an award of

benefits or further fact-finding.   It is well established that "[a] judicial award of benefits is proper only where the proof of disability is overwhelming or where the proof of disability is strong and evidence to the contrary is lacking.  *Faucher v. Sec. of Health and Human Services*, 17 F.3d 171, 176 (6th Cir. 1994).  "[T]he court can reverse the decision and immediately award benefits only if all essential factual issues have been resolved and the record adequately establishes plaintiff's entitlement to benefits.  *Id.*

The ALJ's weakly supported rejection of Dr. Long's opinion points to a remand for further fact-finding rather than an award of benefits.  In contrast, the record shows that Plaintiff's hospitalizations for asthma attacks in 2011 and 2012  establish disability under Listing 3.03B, at a minimum, for a closed period of at least one year.  *See Pena v. Barnhart,* 2002 WL 31487903, \*11 (S.D.N.Y. October 29, 2002); 42 U.S.C. §§ 1382c(a)(3)(A), 423(d)(1)(A)(*"*In determining whether Plaintiff is entitled to disability benefits, it is also necessary to consider every period during which Plaintiff may have been disabled").  While Plaintiff was hospitalized for asthma for the first time in June, 2011 and the last time in February, 2012, the hospitalizations cannot be used as "bookends" to establish that he did not experience disabling symptoms of the condition before and after those dates.  Notably, the transcript shows that he exhibited severe symptoms as early as March, 2011 until at least May, 2012, at which time Spriometry report (Tr. 495) showed that the condition was "poorly controlled" (Tr. 302-303, 495, 522-523, 527, 564).  Although the focus of Plaintiff's treatment shifted to the conditions of COPD and emphysema in the second half of 2012, the

record shows that he met Listing 3.03B for a minimum of 12 months. Moreover, while the record does not establish overwhelmingly that Plaintiff met the listings for either COPD or emphysema for the period in question, his extensive treatment for these conditions, in combination with the other physical and mental conditions, casts doubt on the Step Five finding that he is capable of even sedentary work.  thus, Plaintiff is entitled, at a minimum, to an award of benefits for a closed period, ad reconsideration of his entitlement to further or ongoing benefits.

## VI.   CONCLUSION

For these reasons, I recommend that Defendant's Motion for Summary Judgment be DENIED and that Plaintiff's Motion for Summary Judgment be GRANTED to the following extent:

> (1) A remand for an award of benefits for, at a minimum, a closed period of at least 12 months under Listing 3.03B;
>
> (2) A remand for determination of whether Dr. Long's treating opinion is entitled controlling weight; and
>
> (3) A remand for determination of whether Plaintiff is entitled to ongoing benefits.

Any objections to this  Report and Recommendation must be filed  within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir.  1991); *United States v. Walters,* 638 F.2d 947 (6th

Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/ R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: October 26, 2015

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on October 26, 2015, electronically and/or by U.S. mail.

s/Carolyn M. Ciesla
Case Manager to the
Honorable R. Steven Whalen